WILLIAM W. THOMAS, JR., *vs.* EVERETT W. STETSON.

*Surety — discharge of.*

A procured for his own accommodation the acceptance of B, by giving the latter his promissory note, with the defendant as surety, as collateral security; a month before the acceptance became due, A procured another acceptance of B, which he had discounted, and with the avails thereof and other money paid the former acceptance. *Held,* that the surety was thereby discharged.

*It seems,* that a renewal of the acceptance in such a case, without the consent of the surety, is such an extension of time of payment as releases the surety.

ON REPORT.

ASSUMPSIT upon a promissory note of the following tenor:

" $1,500.                         DAMARISCOTTA, Jan. 5, 1866.

For value received, we jointly and severally promise to pay Edward S. Tobey, or order, fifteen hundred dollars in three months from date.          Signed,               JOSEPH DAY,

E. W. STETSON."

The action was brought in the name of the plaintiff for the benefit of Tobey.

The facts sufficiently appear in the opinion.

*W. W. Thomas, jr.* (and with him *Haskell*), for the plaintiff.

*Davis & Drummond,* for the defendant.

KENT, J.   It is agreed that this action is to be determined, as if it had been brought in the name of the payee, Edward S. Tobey. It is not pretended that it was given or signed by this defendant in payment of any debt due from Stetson to Tobey, or for any consideration directly moving between them.   The facts, as we find them in the evidence, are substantially these: Joseph Day, the other signer of this note, was desirous of obtaining the name of Mr. Tobey as acceptor of a draft for $1,500, for his accommodation.   Mr. Tobey agreed thus to lend his name, on condition that

Day should give him security for the payment of the accepted draft.  He applied to Mr. Stetson, the defendant, and explained to him his wishes, and Mr. Stetson thereupon, for Day's accommodation, signed the note in suit, and delivered it to him, to "use in any way he could by which to raise the amount of money."   It was used by depositing it with the plaintiff, in interest, as collateral for his acceptance of Day's draft on three months, for fifteen hundred dollars.   This is shown by the minute made at the time by the plaintiff.

It is clear that if the acceptance had been paid in money, by Day, when it fell due, the note would have been, so far as these parties are concerned, *functus officio*.   The plaintiff could not have maintained an action on the note against the defendant, although in terms made payable to himself, because it had been, in effect, paid, or its real obligation discharged, as to him.

It appears that Day obtained the acceptance of Tobey to another draft of like amount, dated Feb. 18, 1866, a month before the first draft became due, and more than a month before this note in suit became due.   Mr. Day says he had this last acceptance discounted and remitted the proceeds and made up the balance of the fifteen hundred dollars to Tobey.   And this course of procedure continued, until seven acceptances had thus been made, the last four having been for $1,000 each, instead of $1,500.   This note remained in the hands of Tobey.

Day failed before the last acceptance became due, and the plaintiff claims a balance due to him of $1,312.85 from Day, and insists that he has a legal claim on this note for that sum, on the ground that it had remained as collateral security for all these drafts.

There can be no doubt that Mr. Tobey understood that the defendant was a surety in fact for Day.   The note was not given to Day as payee and by him indorsed, but is payable to Tobey, or order.   Tobey had no dealings with defendant and no consideration moved between them.   He took the note merely as collateral security for Day's liability to him, and had the promise of the defendant as surety for Day.

Stetson, the defendant, lent his name to be used by Day, to obtain the sum named in the note.  He was willing to stand as surety for Day, in any form, for that sum and that length of time, but he did not agree to thus stand for an indefinite time, and as collateral for an indefinite number of successive acceptances.  The note was received as collateral security for the acceptance of Dec. 18th as appears by the memorandum.  Nothing is said of any other draft, or of renewals.  No notice was given to defendant of non-payment.  The second draft was not properly a renewal of the first.  It was, as before stated, accepted a month before the first became due.  During that time Tobey had two acceptances outstanding.  Day, when the time came, raised the money by discounting the second draft, and adding to the proceeds other money, he sent the whole to Tobey, and thus the first draft was paid.

But if the second and succeeding drafts could be regarded as renewals of the first, yet if the defendant was but a surety, and known to be such by the payee of the note, those extensions by renewals, without the assent of the surety, would seem to bring the case within the established doctrines, which exonerate a surety in such a case.  The right to sue the parties to the note would be suspended, if holden only as collateral for the payment of a draft, until there had been a breach of the condition by non-payment or non-protection of the draft.  This would operate as such giving of time to the principal as would release the surety.

Upon the case, as presented to us, we do not think that the defendant can be held liable to the plaintiff on this note.

*Judgment for the defendant.*

APPLETON, C. J.; WALTON, DICKERSON, and TAPLEY, JJ., concurred.